# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES J. MANNING, JR. and
SARAH MANNING, individually and
as next friends of their children,
CHARLES J. MANNING, III and
VANESSA L. MANNING,
      Plaintiffs,

v.                              CIVIL ACTION NO.: 5:02CV71

PFIZER, INC., a successor by merger
of Parke-Davis, a Division of
Warner-Lambert, Company,
      Defendant.

## OPINION / REPORT AND RECOMMENDATION

On August 17, 2005 came the Plaintiffs by their counsel, Ronald W. Kasserman and Jerry Sklavounakis, and also came the Defendant by its counsel, Jeffrey M. Wakefield, Rebecca Betts and William Wilmoth, for hearing on Plaintiffs' Motion: 1) For Sanctions Of Attorney Fees And Expenses Pursuant to FRCivP 54(d)(2) and FRCivP 37(a)(4) filed January 10, 2005, and bearing Docket Entry 254; 2) To Alter Or Amend Judgment For Sanctions And Attorneys Fees Pursuant To FRCivP 59(e) filed January 10, 2005, and bearing Docket Entry 256; and 3) For Amended Or Additional Findings For Sanctions And Attorney Fees Pursuant To FRCivP 52(b) filed January 10, 2005, and bearing Docket Entry 257.

The matter was referred to the undersigned by the District Judge by Order dated May 18, 2005.

At the outset of the hearing, the parties, by counsel, advised the undersigned that no evidence need be taken unless the Court reopened the within civil action and conducted *de novo* review of the prior motions to compel decided by Magistrate Judge James E. Seibert before he recused himself pursuant to a motion filed by Defendant. Accordingly, the undersigned heard oral arguments on the

matters in issue before retiring to consider and prepare this Opinion / Report and Recommendation.

## Statement Of The Case and Relevant Procedural History

This is a civil action brought on June 5, 2002,  by Charles J. Manning, Jr., and his wife in their own right and in behalf of their children against Pfizer.  The Mannings sought compensatory and punitive damages against Pfizer for injuries allegedly sustained by Charles J. Manning, Jr., as a result of his taking Neurontin for management of pain secondary to a motor vehicle accident. Manning's physicians at Ohio State University prescribed Neurontin at up to three (3) times the FDA dosage recommended for treatment of epileptic seizures.    Manning alleged that Pfizer aggressively off-label marketed Neurontin to practicing physicians within Pfizer's north central customer business unit  for pain management when it knew or should have known there could be serious side effects and that such off-label marketing was not approved by the FDA.  The north central customer business unit included Ohio State University.  Manning alleged he started suffering seizures in 1997, which continued past the filing of the complaint, developed memory loss, and became totally disabled all due to taking Neurontin.  Pfizer denied all liability.

After the case was filed, the parties engaged in vigorous and often hotly contested discovery resulting in the filing of a number of motions to compel: February 23, 2004; May 7, 2004; May 20, 2004,

**First Motion To Compel**

On February 23, 2004, Plaintiffs moved to compel Pfizer to respond to Interrogatories 4, 5 and 7 and Document Requests 4, 5, 10, 13, 22, 28, 35, 36, 43, 45, 49, 56, 57, 58, 59, 60, 61, 62, 64, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 94, 91,92, 96, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108 and 111.  Magistrate Judge James E. Seibert held a hearing and

found that Plaintiffs' Motion to Compel was not timely filed with respect to Interrogatory 7 and Document Requests 4, 62, 64, 66, 67, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79 80, 81, 82, 83, 84, 91, 96, 103, 104, 105, 106, 107 and 108 and, therefore, denied Plaintiffs' motion as to those requests. Magistrate Judge Seibert also found Plaintiffs' Motion to Compel in some respects was untimely. However, since: 1) Defendant initially objected, but later agreed, to permit Plaintiffs' counsel to go to New York to review documents, and 2) the actual document review was delayed because of counsel for Plaintiffs' back surgery, he found the Motion to Compel was timely as to Interrogatories 4 and 5 and the remaining Requests. Magistrate Judge Seibert further found Defendant's objections to those interrogatories and requests well founded. Accordingly Magistrate Judge Seibert ordered Defendant to file supplemental responses to Interrogatories 4 and 5 and Requests 22, 28, 35, 36, 43, 45, 49, 56, 57, 58, 59, 60, 61, 92, 98, 99, 100, 101 and 102. Magistrate Judge Seibert did not award fees, costs, or sanctions.

The net effect of the Magistrate Judge's Order was to grant, in part, and deny, in part, Plaintiffs' Motion to Compel. Defendant filed objections to the Magistrate Judge's Order. Plaintiffs did not file any objections. The District Judge affirmed the decision of the Magistrate Judge by Order dated April 21, 2004.

**Second Motion To Compel**

On April 20, 2004, Plaintiffs filed their Motion To Compel Responses To Second Discovery which was responded to by Defendant. In the motion, Plaintiffs sought an order compelling complete and full responses to certain Requests, including, but not limited to, 1 and 2 and certain Interrogatories including, but not limited to, 1, 2, 3 and 4. Pursuant to the District Judge's Order of Reference, Magistrate Judge Seibert conducted hearings. At the hearing, Plaintiffs advised the

Magistrate Judge that Defendant had satisfactorily responded to Request 1. The Magistrate Judge Ordered:

1) Pfizer to fully respond to Request 2, except for privileged documents which the Magistrate Judge found were properly identified in Defendant's privilege log.

2) Pfizer to fully respond to Request 11.

3) Denied the motion with respect to Response to Request 12 as protected under the work product doctrine and as moot and with respect to Response to Request 13 as mooted by Pfizer's filings with the SEC.

4) Denied the motion with respect to Response to Request 14 as moot.

The net effect of the Magistrate Judge's Order was to grant, in part, and deny, in part, Plaintiffs' Motion to Compel. The Magistrate Judge's Order did not grant attorney fees, costs or sanctions and did not call upon either party to submit a statement of fees and costs associated with prosecution or defense of the motion. No objections were filed to the Magistrate Judge's Order.

**Third Motion To Compel**

On May 20, 2004, Plaintiffs filed their third Motion to Compel Pfizer to fully respond to Requests 2, 5, 8, 12, 13, 14, 15, 16, 17, 22, 23, 24, 25, 26, 27, 29, 30, 32, 33, 35, 37, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55.

Defendant responded contending the motion was the same as previously denied as untimely (the first Motion to Compel). Magistrate Judge Seibert overruled Defendant's objection and permitted Plaintiffs' re-request on the grounds that the first Motion to Compel had been denied on procedural grounds and not on the substantive merits. The Magistrate Judge proceeded to render a split decision granting, in part, and denying, in part, Plaintiffs' third Motion to Compel. The

Magistrate Judge Ordered:

*Request 2* – Denied as moot.

*Request 5* – Granted Plaintiffs more time to review the 7 CD's of material Defendant had provided.

*Request 8* – Defendant agreed to provide the information responsive to the request.

*Requests 12, 33, 40 and 41* – Found Defendant's index violated the rules and ordered Defendant to provide a clear, concise and intelligible index.

*Requests 13, 14, 15, 16 and 17* – Denied as mooted by Defendant's agreement to provide the information.

*Requests 22, 23, 24, 25, 26, 27 and 29* – Held them to be overly broad and narrowed their scope and ordered Defendant to respond to the requests as modified.

*Requests 30 and 32* – Held them to be overly broad and narrowed their scope and ordered Defendant to respond to the requests as modified.

*Requests 35, 37, 49, 50 and 53* – Held them to be overly broad and narrowed their scope and ordered Defendant to respond to the requests as modified.

*Request 42* – Held the documents produced were illegible and granted the Motion to Compel legible copies.

*Request 44* – Held the request to be overly broad and narrowed its scope and ordered Defendant to respond to the request as modified.

*Requests 45, 46 and 47* – Rendered moot by the parties agreement to narrow the scope and respond to the narrowed scope.

*Request 48* – Denied as mooted by Defendant's agreement to produce.

*Requests 51, 52 and 55* – Held them to be overly broad and narrowed their scope and ordered

Defendant to respond to the requests as modified.

With respect to this third Motion to Compel, the Magistrate Judge included in his Order ruling on the motion that Plaintiffs file their claim for reasonable expenses and fees related to the filing and prosecution of the motion and further ordered that the Defendant be given an opportunity to be heard as to "why reasonable expenses and sanctions should not be awarded."

On July 6, 2004, Plaintiffs filed their claim for costs incident to document inspection in Ann Arbor, Michigan, totaling $24,005.84 and for costs incident to document inspection in New York totaling $20,549.03.

On July 13, 2004, Defendant filed its Motion for Reconsideration. On July 21, 2004, Defendant filed its Opposition to Award of Expenses or Sanctions.

On August 6, 2004, the Magistrate Judge entered an order granting, in part, and denying, in part, Defendant's Motion For Reconsideration. Magistrate Judge Seibert vacated that portion of the June 25, 2004, ruling requiring a new index based on Defendant's earlier representation that the index reflected the way the documents were kept in the ordinary course of business but maintained that portion of the order providing for filing of a claim for expenses, costs and sanctions and providing for an opportunity to be heard on the same.

By Order dated September 13, 2004, the opportunity to be heard hearing was scheduled.

On September 27, 2004, Defendant filed a motion for clarification.

On September 28, 2004, the Magistrate Judge granted Defendant's motion for clarification stating that the subject matter of the opportunity to be heard would be the reasonable expenses and sanctions as to "all the conduct of Pfizer, Inc., and its counsel in responding to the discovery and the three motions to compel filed by Plaintiffs." By illustration of what may be considered at the

opportunity to be heard proceeding, the Magistrate Judge stated: "[T]he conduct of Pfizer and its counsel beginning with the responses to Plaintiffs' discovery requests with general objections and use of the familiar litany vague, overly broad and burdensome and ending with representations that discovery was produced as kept in the ordinary course of business when they were not." The Magistrate Judge rescheduled the hearing from September 29, 2004, to November 3, 2004.

On September 29, 2004, pursuant to invitation of the Magistrate Judge, Defendant filed it's motion to disqualify the Magistrate Judge pursuant to 455(b)(5)(iii) because the Magistrate Judge's sister was an equity partner in Plaintiffs' counsel's law firm.

By Order dated October 4, 2004, Magistrate Judge Seibert recused himself pursuant to 455(b)(5)(iii) and vacated the Order scheduling the opportunity to be heard for November 3, 2004.

Thereafter, the matter was referred to the undersigned by Order dated November 2, 2004, who conducted hearings and rendered decisions related to Plaintiffs' December 9, 2004, fourth Motion To Compel and Plaintiffs' December 15, 2004, Motion To Remove Confidentiality Of Defendant's Produced Documents.

On December 30, 2004, District Judge Frederick P. Stamp, Jr., entered an order granting judgment for the Defendant, Pfizer, on the statute of limitations and merits, denying as moot "any other pending motions" and dismissing and striking the case from the docket pursuant to FRCivP 58.

## Contentions Of The Parties

**Contentions Of Plaintiffs**

1)      Filing of a post summary judgment motion for payment of fees and costs is authorized by FRCivP 54(d)(2)(B).

2) Summary judgment does not "absolve Defendant and defense counsel from a host of sanctionable 'sins' that occurred while the litigation was in discovery."

3) Sanctions and expenses are mandatory when a motion to compel is granted pursuant to FRCivP 37(a)(4).

4) District Judge should find that Pfizer and it's counsel misrepresented facts to the Court during discovery and should sanction Defendant Pfizer pursuant to FRCivP 37(c) and 37(b)(2)(A) and (C) by setting aside the Order Granting Summary Judgment and entering judgment for Plaintiffs on liability or, in the alternative, granting to Plaintiffs attorney fees and expenses.

## Contentions of Defendant

1) Plaintiffs motions were denied as moot by the judgment order entered by the District Judge.

2) The rules of civil procedure relied on by Plaintiff (Rule 59(e), Rule 52(b), Rule 54(d)(2), Rule 37(c), Rule 37(a)(4)(A) and (C)) do not apply to the motion for attorneys fees.

3) Discovery orders and actions of Magistrate Seibert are void.

4) Discovery orders do not support an award of fees and expenses as sanctions.

5) Pfizer is entitled to mandatory award of fees and costs if discovery issues are reopened.

## <u>Issues Presented</u>

1) What is the effect of the recusal of Magistrate Judge Seibert on prior rulings made in the subject case?

2) Did the entry of an order granting summary judgment and denying all pending motions as moot preclude future determination of a pending but yet unheard Rule 37 motion for fees and expenses?

3)      Are Rules 59(e), 52(b) and 54(d)(2) available to Plaintiffs to reopen the within litigation in

order for the Court to reach back and grant the relief Plaintiffs lost in summary judgment or,

in the alternative, some or all of the attorneys fees and costs they incurred in the

unsuccessful effort?

4)      Is Pfizer entitled to recover fees and costs?

5)      Are Plaintiffs entitled to an award of costs and fees with respect to any of the motions to

compel prosecuted by them against Pfizer pursuant to Rule 37?

## Discussion

**Effect Of Magistrate Judge's Recusal On Prior Rulings**

28 USC §455 defines the circumstances that mandate disqualification of federal judges.

Section 455(a) provides in pertinent part:

(a) a judge "shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned."

The prevailing view under §455(a) is that a judge's "disqualification runs from the time the

motion was made or granted."  <u>United States v. Murphy</u>, 768 F.2d 1518 (7th Cir. 1985).  <u>Murphy</u>

involved a judge tried and convicted of mail fraud and Hobb's Act violations incident to a scheme

of bribery and extortion in the  fixing of Chicago traffic court violations.  Murphy's counsel first

raised that the trial judge and prosecutor were close personal friends in a post-conviction motion.

The Appeals Court  recognized the appearance of impropriety of a trial judge who had such close

ties to the  prosecutor in that they vacationed together immediately following the defendant's

sentencing mandated recusal.  However, following its earlier decisions, the Seventh Circuit "did not

vacate all of the judge's earlier orders and require the new judge to start afresh" reasoning "[o]ur

research has not turned up any case involving mere appearance of impropriety in which the court set aside decisions that had been taken by the district judge before any party asked for recusal." The Murphy Court further reasoned that §455(a) was more concerned with cases that involved the appearance of impropriety rather than actual conflicts of interest which were the focus of §455(b). It recognized that §455(a) was "designed to put an extra measure of safety into the system" but that when the "extra measure fails, the result is regrettable, and the judicial system as a whole suffers, but this does not mean that the parties actually received an unjust trial." *Id.* 1540.

The Supreme Court of The United States wrestled with the issue in <u>Liljeberg v. Health Services Acquisition Corp.</u>, in 1987, 486 U.S. 847, 108 S. Ct. 2194, 100 L.Ed. 2d. 855. <u>Liljeberg</u> involved a declaratory judgment action between a pharmacist and a national health management company that obtained a certificate of need for the construction of a Louisiana hospital. The health management company contended the agreement provided for transfer of the hospital corporation to it following obtaining of the certificate of need. The pharmacist disputed the company's interpretation of the agreement. The trial judge granted judgment for the pharmacist. Subsequent to the judgment, the health management company discovered that: 1) the trial judge was and had been a trustee of a university that was in negotiations with the pharmacist over the tract of land on which the hospital was to be built and 2) the success of those negotiations were dependent on the outcome of the decision of the court as to whether the pharmacist, not the health care company, controlled the hospital corporation[1]. The Supreme Court affirmed a lower court of appeals ruling

---

[1]The facts are more egregious than noted in the body of this opinion/report and recommendation. The trial judge knew of the university's interest in the hospital land immediately before and after his decision in the case. While he was not present at the university board of trustees meeting held during the two week period of trial and while the matter was under consideration, the trustees monitored the case and did not bother to contact the trial judge

granting a new trial and in so doing, pursuant to §455(a), announced a three-prong inquiry: "it is appropriate to consider 1) the risk of injustice to the parties in the particular case, 2) the risk that the denial of relief will produce injustice in other cases, and 3) the risk of undermining the public's confidence in the judicial process." The Court noted that while "§455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty" further noting that "Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation." *Id.* 862-863.

In the instant case, Defendant contends that if the matter of discovery fees, costs or sanctions is opened due to the disqualification of the Magistrate Judge, the entirety of the decisions of the Magistrate Judge are subject to *de novo* review by virtue of §455(b)(5)(iii), which provides in pertinent part: "(b) [A judge] shall also disqualify himself in the following circumstances: (5) He or his spouse, or a person within the third degree or relationship to either of them, or the spouse of such person: (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."

There is no question that Magistrate Judge Seibert's sister is a partner in the law firm representing Plaintiffs in the within civil action. There is no question that as such, she has an "interest that could be substantially affected by the outcome of the proceeding." It was, therefore, appropriate that Magistrate Judge Seibert recuse himself. Such a §455(b) recusal cannot be waived by the parties even after full disclosure because it involves actual bias. 28 USC §455(e) and <u>United</u>

---

relative to the obvious conflict.

States v. Murphy, *supra* at 1540.[2]

The fact that Magistrate Judge Seibert did not recuse himself pursuant to §455(b) as soon as the case was referred to him and it became apparent his sister's law firm was representing one of the parties before him does not automatically vitiate all that he did in the case nor does it require an automatic de novo review. The better view is to apply the three prong test approved by the Supreme Court in Liljeberg v. Health Services Acquisition Corp., *supra.*

While the Supreme Court in Liljeberg, *supra*, did not address the specific issue before the undersigned, a similar issue was presented and decided in Parker et al v. Connors Steel Company et al, 855 F.2d 1510 (Eleventh Cir. 1988). Parker involved employees suing their former employer and union on various theories arising out of alleged: 1) breaches of a collective bargaining agreement, two concession contracts modifying the collective bargaining agreement which were negotiated while the employer was facing financial difficulty from competition in the reinforcing steel business; 2) fraud; and 3) claims the union breached its duty of fair representation. After arbitration which resulted in a partial award for the employees, the disgruntled employees filed suit on their remaining claims in state court. The case was removed to federal court. After

_____

[2]It is not lost on the undersigned that Mr. Kasserman was a former law partner of Magistrate Judge Seibert and he did not raise the issue of disqualification during the discovery dispute process. It is also not lost on the undersigned that the law firm representing Plaintiffs in the within civil action is Seibert and Kasserman, LLC; the firm letterhead lists "Sue Seibert Farnsworth" as first in line partner; and literally dozens of letters on firm letterhead were received by Pfizer's legal counsel in this case. Yet, Mr. Wakefield did not raise the issue of disqualification until it became apparent he, his firm and his client might be the subject of judicial sanctions. Counsel may point to the statute and assert that it is the duty of the judicial officer to take the required action. They would be correct to do so. No motion is required from the parties to effect a recusal. However, to do so, ignores counsels' duty and responsibility to their respective clients who pay their bills and to the public who relies on the integrity of the judicial system to bring such concern promptly to the attention of the Court.

approximately two years of litigation and substantial discovery, the District Judge (Lynne) entered judgment favoring the defendants. Subsequent to the adverse judgment, the employees filed a motion requesting the District Judge recuse himself from the case on the grounds that a law clerk who had worked on the case and to whom the judge, in written opinions, had given substantial credit for that work, was the son of a lawyer who was a partner of the firm representing some of the party defendants. The District Judge refused to recuse himself. The Eleventh Circuit wrote: "although we conclude that it was a violation of §455(a) for Judge Lynne to deny the employees' motion to recuse himself from this case, we believe it was harmless error." In reaching the harmless error conclusion, the Court reasoned that even assuming a §455(b) violation, the remedy provided by under the Supreme Court's  Liljeberg decision, *supra,* was appropriate.  Following the lead of the Seventh Circuit, and being "confident that the Supreme Court intended its test to be applied to all §455 violations, whether involving subsection a or subsection b", the Eleventh Circuit  Court of Appeals concluded that the differences between subsection a and b violations did not "preclude the application of harmless error analysis in the context of a §455(b) violation. It relied heavily on the following language of the Supreme Court in Liljeberg: "Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all §455 violations." Instead of addressing the merits of the §455(b) claim, the Court determined the matter under the harmless error analysis applicable to both subsection a and b claims.

Applying that method of analysis to the instant case, the undersigned finds and concludes:

1)      The risk of injustice to the parties in this case is non-existent. As has been intimated and will be pointed out in more detail later in this opinion/report and recommendation, all three motions to compel discovery decided by Magistrate

Seibert were split decisions. Not one of the parties to this action argues that the substance of the three discovery decisions made by the Magistrate Judge was the result of bias or were wrong. The first two decisions did not provide for any award to either party of attorneys fees or costs incident to prosecution or defense of the motions. The decision of the first motion was appealed by Defendant and the District Judge, upon review, affirmed thereby making that ruling the ruling of the District Judge. No further appeal of that ruling was made. No appeal of the second ruling was made. With respect to the third Motion to Compel decided by Magistrate Judge Seibert, neither party appealed the underlying substance of the decision. In point of fact, both parties admitted to the undersigned during the hearing that if the discovery disputes were reviewed, the undersigned could reach the same decision that was reached by Magistrate Judge Seibert. Counsel for Plaintiffs did not believe it was necessary for the undersigned to review the prior discovery disputes *de novo* and counsel for Defendant only believed *de novo* review was required if any of the discovery was reopened to consider fees and costs as sanctions. Neither of the parties asserts that any of the discovery rulings of Magistrate Judge Seibert adversely impacted their positions in arguing for or against the Motion to Dismiss or Motion for Summary Judgment. Neither of the parties argues their positions with respect to the District Judge's final disposition of the case by summary judgment was adversely impacted by any of the decisions made by Magistrate Judge Seibert.

2) The undersigned finds no basis to conclude that denying relief to the parties in the within action will produce injustice in other cases. It is unlikely that Magistrate

Judge Seibert will preside in any other civil cases wherein his sister's law firm is representing one of the litigants. Not one of the parties has even remotely suggested such a basis for relief. Moreover, since the matters ruled on by Magistrate Judge Seibert were non-dispositive discovery motions and since the ultimate decision of summary judgment was made by the District Judge, any decision to deny the parties relief based on the pending motions will not produce injustice in future cases.

3) Finally, Magistrate Judge Seibert's failure to recuse himself at the beginning of the discovery dispute process was harmless error cured by his recusal at the end of that process. Therefore, the undersigned does not perceive and does not find that the public's confidence in the judicial process will be undermined by denying the parties relief sought in their pending motions.

**Did Summary Judgment Preclude Relief Under RCP 37**

On December 30, 2004, District Judge Frederick P. Stamp, Jr., entered judgment and by Memorandum Opinion and Order denied Plaintiffs' Motion for Partial Summary Judgment and instead granted Defendant's Motion for Summary Judgment. The judgment order provided: "[a]ny other pending motions in this action are hereby **DENIED AS MOOT**." Defendant maintains that this provision in the judgment order precludes any further attempt by Plaintiffs to recover civil sanctions, costs and attorneys fees for alleged discovery abuses. Defendant argues in the alternative that Plaintiffs cannot recover costs and fees for alleged discovery abuses because Plaintiffs did not prevail on any of their four motions to compel and/or no discovery abuses occurred. Without citation of significant authority, Plaintiffs contend to permit the Defendant to escape sanctions and fees and costs would result in manifest injustice.

15

The undersigned does not know and does not presume what was known or intended by the District Judge relative to the discovery dispute history between the parties at the moment he penned his judgment order in this action. However, his order is clear. It denied as having been rendered moot by the summary judgment any other motions that were pending but not yet decided in the action. The case was being ended by the judgment order and the District Judge was bringing finality to the litigation.

Defendant relies on <u>Popeil Brothers, Inc. v. Schick Electric Inc.</u>, 516 F.2d 772, 778 (7th Cir. 1975) for the proposition "that expenses and fees must be timely sought prior to judgment and appeal, and that if the judgment is silent in regard thereto, they are deemed waived or denied.." <u>Popeil</u> was a patent infringement action. Plaintiffs lost at the trial court and appellate court levels. Both the original decision and the appellate decision were silent with respect to award of costs and fees to the prevailing party under the old equity practice codified in FRCivP 54(d). Those decisions were also silent and with respect to award of FRCivP37(c) expenses and fees incurred in the taking of depositions in Japan in order to prove facts or conclusions Plaintiff refused to admit. Drawing a distinction between FRCivP 54 and 37 and noting that FRCivP 37(c) contained no presumption of the award of fees and costs, the appellate court held that Defendant did not timely seek the fees and expenses prior to the entry of judgment and, therefore, waived the right to do so post judgment.

At first blush, District Judge Stamp's judgment order in light of <u>Popeil</u>, *supra,* appears to be dispositive. However, given that prior to the judgment order, Plaintiffs moved to compel discovery and requested fees and expenses in their third motion and resolution of that motion was interrupted by the recusal of Magistrate Judge Seibert and finally the judgment order, Plaintiffs may not have waived their claim for costs and expenses.

This principle of non-waiver was recognized in Airtex Corporation v. Shelley Radiant Ceiling Company, 536 F.2d 145 (7th Cir. 1976). Airtex involved claims of patent infringement by Shelley relative to the manufacture and marketing of high performance metal ceiling heating and cooling panels. After discovery, the trial court held the Beck patent invalid based on its obviousness at the time of invention. After trial, Shelley moved for expenses under FRCivP 37 contending Airtex's answers did "not comport with the duty of cooperation and disclosure imposed by the discovery provisions of the federal rules" forcing Shelley to ferret out the information on its own at considerable expense. Airtex contended Shelley waived any claim for costs and expenses it may have had by not timely filing its claim prior to trial. In finding no waiver, the Court of appeals held:

> "Under the circumstances of this case, however, it would be unjust to find a waiver on the basis of Shelley's failure to request an order to compel answers under rule 37(a). The evasive and incomplete character of Airtex's answers was not immediately apparent to Shelley and did not become so until Shelley conducted further discovery. It was useless to ask the court to compel Airtex to provide information which Shelley had subsequently uncovered through its own efforts. Thus the only practical occasion to seek sanctions against Airtex was after trial in the form of requesting expenses. Since such request was made after trial and before judgment, no grounds for finding a waver exists." *Id.* 155.

While not considered binding or precedent, the Supreme Court of Appeals of West Virginia decision on the issue in Shreve v. Warren Assoc., Inc. et al., 177 W.Va. 600, 355 S.E.2d 389 (1987), is instructive. In that products liability action the Court held: "[d]ismissal of manufacturer defendant from case by judgment did not defeat defendant's right to attorney fees as discovery sanction that was requested before entry of judgment, where trial court had specifically deferred ruling on motion for sanctions until later time."

The Second Circuit considered the issue and held in Mercy v. County of Suffolk, New York, 748 F.2d 52 (1984), that in a police brutality action in which the police prevailed at trial and the trial

judge denied Plaintiff's post trial motion for costs in connection with prior judge's ruling denying defendants' motion for protective order:

> Denial of plaintiffs' motion for attorney fees, which are incurred in connection with opposing defendants' motion for protective order against plaintiffs' discovery request, based on determination that prior judge, in denying protective order, also denied award of expenses to plaintiffs unless they ultimately prevailed in litigation, was error.

> Motion for sanctions for resisting discovery should be promptly made, thereby allowing judge to rule on matter when it is still fresh in his mind, and motion should be deemed waived if it is not made prior to judgment and if judgment entered does not expressly reserve right to make motion thereafter; indeed, motion should normally be deemed waived if it is not made prior to trial, unless judge determines that motion has nevertheless been made within reasonable time.

Applying the principles set forth in the cases and the language of the rule to the facts of the subject case, the undersigned concludes that:

1) Plaintiffs did not waive their claim for attorney fees and costs as sanctions for alleged discovery abuses by Defendant but instead raised the same in their third Motion to Compel.

2) Plaintiffs' claims for attorney fees and costs as sanctions for alleged discovery abuses by Defendant as raised in their third Motion to Compel were not precluded by the Court's summary judgment order unless the District Judge determines upon review of this opinion/report and recommendation that was the result he intended by the language of his judgment order. To determine otherwise is to ignore the facts that: the claims were made by Plaintiffs prior to the entry of summary judgment against them and the claims were pending decision by the since recused Magistrate Judge at the time the summary judgment order was entered. To determine otherwise may result in a party abusing the discovery process in violation of the rules being unintentionally rewarded for such abuse by the entry of a case dispositive order prior to a decision on sanctions being made.

3)      Plaintiffs in the within action were not dilatory in seeking fees and costs as sanctions for alleged discovery abuses with respect to their third motion to compel.

In the Northern District of West Virginia, a role of the Magistrate Judge in civil cases is to assist the District Judges and the parties in readying a case for disposition.  Normally, that involves monitoring discovery and deciding discovery disputes.  Such work by the Magistrate Judges frees the District Judges from mundane, but often important, discovery dispute work allowing them more time for the trials of criminal and civil cases that are pending on their dockets.  Decisions of Magistrate Judges are always subject to review by the District Judges.  In performing their respective roles in any given case, there is little interaction between the Magistrate Judge and the District Judge during the decisional process.  This may result in the District Judge assigned to a given civil case not having a lot of hands on contact with the case during the discovery process.  The situation could easily arise that the District Judge, while focused on important dispositive motions in the case, may overlook that there may be remaining cost and fee issues on a discovery dispute even though the substantive issue of the discovery dispute had been previously decided.  This is particularly true in the electronic age of case management and filing.  If the underlying discovery dispute is not appealed to the District Judge, there is scant reason he would read or review the reams of information usually filed with respect to the discovery dispute.  Such is sound reasoning for leaving discretion in the District Judge to reopen the case even after disposition by summary judgment or trial to resolve a hanging fee and cost or sanction issue.  In this way, the public and the litigants are assured of the integrity of the process and the court's willingness to require the parties to abide by the rules.

**Rules 59(e), 52(b) and 54(d)(2)**

FRCivP52(b) provides:

On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59. When findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may be later questioned whether or not in the district court the party raising the question objected to the findings, moved to amend them, or moved for partial findings.

FRCivP 54(D)(2) provides:

(A)     Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

(B)     Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

(C)     On request of a party or class member, the court shall afford an opportunity for adversary submissions with respect to the motion in accordance with Rule 43(e) or Rule 78. The court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court. The court shall find the facts and state its conclusions of law as provided in Rule 52(a).

(D)     By local rule the court may establish special procedures by which issues relating to such fees may be resolved without extensive evidentiary hearings. In addition, the court may refer issues relating to the value of services to a special master under Rule 53 without regard to the provisions of Rule 53(a)(1) and may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E)     The provisions of subparagraphs (A) through (D) do not apply to claims for fees and expenses as sanctions for violations of these rules or under 28 USC §1927.

FRCivP 59(e) provides:

> Any motion to alter or amend a judgment shall be filed no later than
> 10 days after entry of the judgment.

These rules pertain to modification of the substance of a judgment order and not to the procedural clashes that occur between parties in the discovery and pretrial process on the road to disposition. Accordingly, the undersigned concludes these rules, by their specific terms (54(d)(2)(E)) and interpretation of those terms, are unavailing to Plaintiffs in this action for the purposes asserted by Plaintiffs' counsel in his briefings and arguments.

**Are Plaintiffs and/or Defendant Entitled to Post Judgment Award of Fees, Costs and/or Sanctions Incident to Alleged Discovery Abuses**

FRCivP 37(a)(4)(A) provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified , or that other circumstances make an award of expenses unjust.

FRCivP 37(a)(4)(C) provides:

> If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Defendant did not timely file its claim for fees and expenses relating to its opposition to Plaintiffs' Motion For Order Removing Confidentiality Of Defendant's Produced Documents. Plaintiffs' motion (Docket Entry 239) was filed December 15, 2004. Defendant's response Docket

Entry 241) was filed December 21, 2004. The response did not assert a claim for costs, fees or sanctions pursuant to FRCivP 37(a)(4)(B) in the event the undersigned denied Plaintiffs their requested relief. The matter was set for hearing before the undersigned by Order (Docket Entry 240) dated December 16, 2004. As a result of a hearing held on December 23, 2004, the undersigned denied Plaintiffs the relief they requested by Order dated January 3, 2005. The Order provided no reservation to the Defendant to make any claim for fees, costs or sanctions. Defendant did not appeal or object to the January 3, 2005, order within 10 days thereof pursuant to FRCivP 72(a). Failure to do so deprives Defendant of the opportunity to "thereafter assign as error a defect in the magistrate judge's order...." The undersigned, therefore, concludes Defendant waived any claim it may have had for costs, fees or sanctions arising from its successful defense of Plaintiffs' Motion For Order Removing Confidentiality Of Defendant's Produced Documents.

Plaintiffs filed three (3) motions to compel decided by Magistrate Judge Seibert and one (1) motion to compel decided by the undersigned.

The first, filed February 23, 2004, resulted in a split decision within the meaning of FRCivP37(a)(4)(C) as previously noted herein. No fees, costs or sanctions were awarded to Plaintiffs under to the discretionary authority of the Magistrate Judge nor did the Magistrate Judge reserve any right to make a later claim for such fees, costs or sanctions. Plaintiffs did not appeal or object to the Magistrate Judge's decision pursuant to FRCivP 72(a). Defendant did object to the Magistrate Judge's decision, and, on appeal, the District Judge affirmed, making the decision his, and no appeal has been taken of the District Judge's affirmation of the Magistrate Judge's decision.

The second, filed April 20, 2004, resulted in a split decision within the meaning of FRCivP37(a)(4)(C) and as previously noted herein fees, costs or sanctions were awarded to

Plaintiffs under to the discretionary authority of the Magistrate Judge nor did the Magistrate Judge reserve any right to make a later claim for such fees, costs or sanctions; and Plaintiffs did not appeal or object to the Magistrate Judge's decision pursuant to FRCivP 72(a).

The undersigned, therefore, concludes Plaintiffs waived any claim they may have had for costs, fees or sanctions arising from their motions to compel filed February 23, 2004, and April 20, 2004. The undersigned, having reviewed the materials of record relating to the first two motions to compel, further concludes that the same or substantially similar split decision would have been made had he heard the motions and, in accord with the discretion provided him under FRCivP 37(a)(4)(C), no fees, costs or sanctions would have been granted to Plaintiffs had they timely pursued the same.

The third, filed May 20, 2004, also resulted in a split decision. It was subsequent to the split decision within the meaning of FRCivP37(a)(4)(C) as previously reported herein. Magistrate Judge Seibert invited Plaintiffs to submit their affidavit of costs and expenses and ordered that Defendant be given the opportunity to be heard on "why reasonable expenses and sanctions should not be awarded." Plaintiffs did so, claiming document inspection costs in Ann Arbor, Michigan, totaling $24,005.84 and document inspection costs in New York totaling $20,549.03. Before the matter could be heard, pursuant to Defendant's motion, Magistrate Judge Seibert recused himself and summary judgment was rendered by the District Judge. Notwithstanding Plaintiffs' strong assertions that: 1) Defendant ran them to Ann Arbor, Michigan, and New York to look at boxes and boxes of documents purportedly containing records of adverse events involving Neurontin and 2) when Plaintiffs' counsel would arrive and conduct the review, it turned out to be a wasted effort because of inadequate indices of the records (not the way the records were allegedly kept in the ordinary

course of business), the substantive decision of Magistrate Judge Seibert 1) was split within the meaning of FRCivP37(a)(4)(C) as previously reported herein and 2) was substantially clouded by the recusal and 3) was substantially clouded by the order vacating hearing. In addition, during the hearing of August 17, 2005, no evidence was offered of any kind. The matter was submitted on: 1) materials within the record pending before the Court together with the transcript of the December 23, 2004, hearing before the undersigned and 2) counsel for Plaintiffs explanation that he arrived at his hourly rate for claim purposes by : a) dividing his last year's income, including contingency fee income, by the number of hours he worked and b) multiplying it by the hours he spent in the prosecution of the motions and inspections. He further explained he gave no consideration to what a going hourly rate or a reasonable hourly rate would be for an attorney of his skill and experience in the Wheeling, West Virginia, area.

While the undersigned does not condone a party running opposition counsel up a blind alley in search of discovery, that such occurred in the within litigation has yet to be finally determined. Magistrate Judge Seibert's order clearly stated that the hearing to be held (opportunity to be heard) was, in part, to determine "why reasonable expenses and sanctions should not be awarded." Magistrate Judge Seibert's orders did not limit the hearing to whether the claims for fees and costs were reasonable as Plaintiffs suggest. The hearing was never held.

Magistrate Judge Seibert telegraphed that he was convinced that such abuse had occurred. Notwithstanding that conviction, Magistrate Judge Seibert handed Plaintiffs a split decision on their third Motion to Compel. The undersigned reviewed the matters of record and would not conclude differently with respect to Plaintiffs' third Motion to Compel. There is insufficient evidence for the undersigned to conclude by a preponderance that Defendant and/or Defendant's counsel abused the

discovery process.

Based on the foregoing and using discretion and in light of what the undersigned considers unreasonable hourly rates ($395.00 per hour) used to make Plaintiffs' claims for fees and refusing to speculate in the absence of evidence on what reasonable fees should be, and finding that Plaintiffs' counsel's affidavit and supplemental affidavits of costs and fees include some items not related to the motion under consideration (Plaintiffs' Third Motion to Compel), the undersigned would not award costs, fees or sanctions in behalf of Plaintiffs on their third Motion to Compel.

Plaintiffs' fourth Motion For Order Compelling Discovery was filed December 9, 2004, and heard by the undersigned on December 23, 2004. A part of the hearing was devoted to Plaintiffs' request to lift a protective order as to documents produced by Defendant. That motion was denied. The other part of the hearing was devoted to Plaintiffs' motion to compel the retaking of Pfizer's 30(b)(6) designated witness. The retaking of the deposition was permitted subject to substantial limitations. No award of fees, costs or sanctions was made or reserved to Plaintiffs. Plaintiffs did not object or appeal the ruling of the undersigned to the District Judge. Reviewing the materials of record with respect to the fourth Motion to Compel relative to the issue of the retaking of the deposition of Pfizer's 30(b)(6) witness, the undersigned essentially found that Pfizer was substantially justified under 27(a)(4)(A) in forcing the matter to be decided by the Court based on the objections that were made to the questions asked during the initial deposition. The undersigned now finds that the decision to permit the retaking of the 30(b)(6) witness deposition was a split decision within the meaning of FRCivP 37(a)(4)(C). Accordingly, the undersigned would not award fees, costs or sanctions to Plaintiffs based on their fourth Motion To Compel.

## RECOMMENDED DECISION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiffs' Motion: 1) For Sanctions Of Attorney Fees And Expenses Pursuant to FRCivP 54(d)(2) and FRCivP 37(a)(4) filed January 10, 2005, and bearing Docket Entry 254; 2) To Alter Or Amend Judgment For Sanctions And Attorneys Fees Pursuant To FRCivP 59(e) filed January 10, 2005, and bearing Docket Entry 256; and 3) For Amended Or Additional Findings For Sanctions And Attorney Fees Pursuant To FRCivP 52(b) filed January 10, 2005, and bearing Docket Entry 257 and Defendant's claim for reasonable expenses incurred in opposing Plaintiffs' Motion for Order Removing Confidentiality Of Defendant's Produced Documents filed as part of Defendants Memorandum In Opposition To Plaintiffs' Motions Pursuant To Rule 59(e), 52(b), 54(d)(2) and 37(a)(4) and bearing Docket Entry 239 be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed provide a copy of this Opinion/Report and

Recommendation to counsel of record.

Respectfully submitted this 24 day of August, 2005.

/s John S. Kaull

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE